# Distler v. Distler.

Dec. 7, 1945.

F. L. Pearl for appellant.

W. A. Middleton for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This divorce action was filed in the McCracken circuit court by the husband, appellee, and plaintiff below, on February 25, 1944. As grounds therefor plaintiff in his petition alleged "that they lived together as man and wife until June 15, 1942, at which time the defendant abandoned plaintiff without fault or like fault on the part of this plaintiff and has since that time refused to live with him as a wife." He then alleged that during the time they lived together, following their marriage in Indianapolis, Ind., in 1910, "he treated her as a husband should treat a wife and that she continuously nagged and fussed and quarreled with him and called him vile names, and acted in such a way as to permanently destroy his peace and happiness."

Defendant's answer denied the alleged grounds for divorce contained in her husband's petition and charged that plaintiff had abandoned her and was guilty of cruel and inhuman treatment; but she did not seek a divorce from him nor the allowance of alimony or maintenance to her.

She then counterclaimed by averring that in 1938—when there were, at least, two of the seven children

born to the marriage, living with their parents in Paducah—she filed an action against her husband in the same court seeking a divorce, and that before judgment therein it was compromised and settled by a written and duly executed agreement between the parties which was filed as an exhibit with her answer, and it was entered as an agreed judgment, followed by dismissal of the action. In that agreement the property rights between the parties were settled, and appellee agreed to thereafter pay to his wife $100 per month payable semi-monthly beginning August 1, 1938, with which appellant was to pay all of the expenses of running the home, the maintenance of the children then living therein, as well as that of her husband, who thereafter continued to occupy the home as a member of the family and as he had theretofore done.

At the time of that agreement the ages of the two children, who were then at home, were about 8 and 12 years respectively. Prior to 1942, the elder one entered the University of Kentucky and obtained a position therein which paid him about $80 per month. The husband then insisted that he should not continue to pay the amount stipulated in the compromise agreement, and when the semi-monthly payment became due on June 15, 1942, he declined to pay the amount stipulated and tendered to his wife only $30 as a semi-monthly payment, stating at the time that he would thereafter continue to reduce the semi-monthly payments to that amount. At the time appellant was so informed the parties had retired and were occupying the same bed. She protested and objected to the proposed reduction, stating at the time that the judgment stipulated that the payments should be $50 semi-monthly, whereupon, according to the testimony of appellant, her husband remarked, "to hell with the Judge." During the controversy, the wife also testified, the husband struck her in the back with his elbow and kicked her, from the effect of which she became ill and unable to attend to her household duties for quite a while and was under the treatment of a physician. She also left the bed they were occupying and retired to another room, but she never left the home, nor did her husband at that time; but he denied in his testimony that he struck his wife as she stated in her testimony.

Following that incident the husband lingered as a member of the household for sometime, but we have been

unable to find in the record whether he ever procured lodging quarters away from home, although he began taking his meals at a restaurant in the city. However, he was informed by his wife that he was welcome to return to the home at any time, of which he took advantage and frequently returned there for a short stay during which time he took his meals prepared by his wife as she had theretofore done.

Before that occasion and following the agreed judgment in 1938, he grumbled at his wife and criticised her for the food she procured and prepared, since, as he said, he believed in "eats" and was not satisfied with any article of food than the best quality. The wife, however, testified that she procured the best steaks and other articles of food that could be obtained under the prevailing conditions, which was during the progress of the war while all households were limited in the matter of food by rationing and OPA orders. Appellant testified that on one occasion when she had procured the best T-bone steak that she could obtain, and had thoroughly cooked it, her husband grumbled about it and spit a mouthful of it on the dish containing the steak. He, however, denied having done so. But he clearly manifested that he was dissatisfied with the character of steak and other articles of food that his wife had procured and prepared for their table.

Plaintiff testified in substantiation of his alleged cruelty of his wife toward him, that she fumigated the rooms of the house following the flood in 1937, and at periods thereafter, which he claimed rendered his bedroom uninhabitable because of the odor therefrom, claiming also that only his room was fumigated, but which the wife denied. In giving his testimony he employed vulgar language in the presence of his wife at the taking of his depositions which is unprintable in this opinion and which together with other facts testified to by him clearly indicate that he possessed an apathetic, morose and cold disposition toward both his wife and their children.

Appellee testified that appellant was a dutiful wife, an industrious housekeeper and a solicitous and painstaking mother until 1931, when she inherited from her father's estate property of the value of about $10,000 which he claimed made her "money mad." But the evi-

dence clearly shows that the claimed change in her disposition was brought about by the importunities of appellee for his wife to pro tanto relieve him of the responsibility of the expenses of the family and to divide that burden with him, which was done to a considerable extent by appellant; but the amount so furnished by her was not as large as appellee thought it should be. That controversy widened from and after that beginning domestic breach between the couple until the filing of the wife's action in 1938. Our appraisal of the testimony discloses that the wife was not so parsimonious with her inheritance as is contended by appellee. On the contrary she did not hesitate to provide whatever was needed for the family, including her husband, when it was not done by him, or when he was without sufficient funds.

Appellee earns as a mechanic in the shops of the Illinois Central Railway Company in Paducah, Ky., compensation amounting to something like $250-$260 per month, but he expended little, if any part, of that amount following the 1938 agreement, in the maintenance of the household or for clothing for his wife and children, the latter articles being procured in the main with their own funds, since the children earned compensation acting as caddies for golf players and distributing newspapers.

Space and time forbid a detailed catalogue of the facts testified to by the wife some of which were not denied by her husband, but a reading of this record leaves the inescapable conclusion that he was at least as much as, if not more, the cause of the domestic trouble between him and his wife, if indeed any serious fault on her part could be gathered therefrom.

Upon submission, on the evidence as we have briefly outlined it, the court granted to the husband an absolute divorce from his wife, but denied her prayer for judgment against him for the unpaid balance due under the agreed judgment entered in the 1938 action referred to, amounting to $898 and dismissed her counterclaim seeking judgment for that amount. No allowance for alimony or maintenance was made, since the wife had not asked therefor, but the judge directed that plaintiff continue to pay his wife, under the aforesaid agreement, $60 per month payable semi-monthly. From that judgment she prosecutes this appeal.

KRS 403.020 prescribes, inter alia, that "a divorce may be granted to the party *not in fault* for the following causes * * * abandonment for one year." (Our emphasis.) We deduce from the testimony as so outlined that plaintiff failed to prove the ground of abandonment alleged in his petition. But if the proof had been sufficient to sustain that ground then the abandonment was clearly not shown to be "without fault" on the part of plaintiff, nor do we conclude that the other indistinct ground alleged in the petition of cruel and inhuman treatment was sufficiently shown, if indeed at all, to authorize the granting of a divorce to the husband. Therefore, after reading and re-reading the testimony taken in the case we conclude that the court should have granted a divorce from bed and board, as is prescribed in KRS 403.050. But, since the absolute divorce has been granted, we are without authority to disturb it.

Appellant, under the evidence, is entitled to maintenance for the support of herself and her infant child now living with her, and since the agreed judgment fixed that sum at $100 per month we conclude that the same amount should continue to be paid to appellee under the terms of the agreement instead of the self-reduced amount of $60 per month that the husband fixed, and which was adopted by the court. The judgment also declined to allow the wife an attorney fee of $50 which she asked, but which we conclude she was entitled to.

Wherefore, for the reasons stated, the judgment is reversed with directions to enter one against the husband for the amount of the deficits paid to appellant under the 1938 agreement, which, according to the record, as we have stated, is $898 and to also allow to the wife $50 as attorney fee to be taxed as costs. The court will set aside the judgment and enter one as herein directed, the semi-monthly payments to continue as herein allotted until the change of conditions shown at a future hearing.